FILED
2015 Dec-07  AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CADENCE BANK, a national banking association; | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:14-cv-768-TMP |
| COMMONWEALTH PARTNERS, LLC; and JOHN L. YOUNG; | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause is before the court on the plaintiff's motion to confirm the award of arbitration entered in this matter.   (Doc. 22).   The defendant, John L. Young,[1] has filed a response in opposition (doc. 25), and the plaintiff, Cadence Bank, has filed a reply (doc. 26).   Also pending is the defendant's motion to vacate the arbitration award issued by the American Arbitration Association ("AAA") on March 6, 2015. (Doc. 27).    Plaintiff has filed a response (doc. 28), and a hearing was held on the

---

[1] After the complaint was filed commencing this action, the other named defendant, Commonwealth Partners LLC, initiated bankruptcy proceedings in the Northern District of Georgia.   The parties do not dispute that all claims against Commonwealth Partners LLC are thus subject to the automatic stay.   AS such they are due to be severed and dismissed without prejudice to the right of the plaintiff to refile this action in the event any claims remain against Commonwealth Partners after the bankruptcy proceedings are completed.

pending motions.   Thereafter, the Trustee in Bankruptcy for Commonwealth (acting through the same attorney representing defendant Young) filed a motion to extend the § 362 bankruptcy stay to this action against Young, which the Trustee later sought to withdraw.  (Docs. 34, 35).  The Trustee filed a second motion to extend the bankruptcy stay to the reopening this case (doc. 36), supported by a brief (doc. 39).    The parties have consented to the exercise of dispositive jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

## PROCEDURAL HISTORY

This action was commenced on April 24, 2014, when Cadence Bank ("Cadence") filed a complaint against Commonwealth Partners LLC, ("Commonwealth") and John L. Young, asserting that the defendants had defaulted on a promissory note and guaranty agreement.  (Doc. 1).  The complaint alleged that Commonwealth had borrowed money from Cadence, evidenced by promissory notes, and that defendant had signed two personal guaranties of the payment of the notes.  Both Commonwealth and defendant Young responded to the complaint by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the district court had no jurisdiction over the claims because the promissory notes contained a valid and enforceable arbitration clause.    (Doc. 11).

Cadence Bank then consented to arbitration.  (Doc. 13).  The parties filed a joint motion to compel arbitration and stay proceedings.  (Doc. 14).  The joint motion recited that the promissory notes contained an arbitration clause and that the parties agreed to ask the court to enter an order compelling arbitration and staying proceedings pending arbitration.

The court, by order dated July 17, 2014, granted the motion to compel arbitration, found the previous motion to dismiss moot, directed the parties to commence the process of arbitration within 15 days, and ordered the parties to file a joint status report within 90 days.  (Doc. 17).  As directed in the order, Cadence[2] filed a status report on October 15, 2014, reciting that the proceedings had been initiated but the arbitration had not yet concluded.  (Doc. 18).  On January 13, 2015, Cadence filed a second status report, reciting that an evidentiary hearing had been conducted before the arbitrator on January 6, 2015, and that post-hearing briefs were being filed.  (Doc. 19).  Cadence also reported that Commonwealth had filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia, and that Cadence was now seeking an award in arbitration against Young only, based upon the fact that claims against

---

[2]       The report recites that plaintiff sent a copy of a proposed status report to the defendants before filing it, but that no response had been received before the 90-day deadline passed.

Commonwealth were subject to an automatic stay pursuant to Section 362 of the Bankruptcy Code.   (Doc. 19).

On March 12, 2015, Cadence filed a report stating that the AAA had issued an award against Young, a copy of which was attached.  (Doc. 20).  On March 18, 2015, defendant Young filed a report reciting that the arbitrator had issued an arbitration order against him in the amount of $447,632.96, which included attorney's fees and costs in the amount of $85,622.47.  (Doc. 21).  Young further stated that he planned to file a motion to vacate the award, based on the contentions that the award of fees and costs was not supported by sufficient evidence and that continuing the arbitration in the absence of Commonwealth provided grounds for vacating the award.  (Doc. 21).  Thereafter, the plaintiff filed a motion to confirm the arbitration award.  (Doc. 22).  Young filed a response in opposition, and the plaintiff filed a reply.  (Doc. 25, 26).  About six weeks later, Young filed a motion to vacate the arbitration award (doc. 27), to which plaintiff filed a response, and defendant Young filed a reply.  (Docs. 28, 29).  The court held a hearing on the motion to vacate on July 15, 2015.  On July 16, 2015, Young sent a letter to the court, and on July 17, 2015, Cadence filed a response to the letter, which was followed by an amended response.   (Docs. 32, 33).

On July 21, 2015, the bankruptcy trustee for Commonwealth, appearing through the same attorney representing Young in this action, filed a motion to stay the entry of a final judgment in this matter until the bankruptcy claims involving Commonwealth are resolved in the United States Bankruptcy Court for the Northern District of Georgia.   The motion also asked this court to extend the stay to cover the claims against Young.   (Doc. 34).   The motion was accompanied by a brief. (Doc. 36).   The trustee then filed a motion to withdraw the motion.  (Doc. 35). The same day, he filed a similar motion, asking that the stay be extended to Young, which motion also was accompanied by a brief.  (Docs. 36, 37).    The next day, Cadence filed a motion for an order confirming the arbitration award and seeking to strike the motion to extend the automatic stay.  (Doc. 38).  A response to the motion to confirm the arbitration award was filed July 30, 2015.[3]  (Doc. 39).

The motions present the court with three issues: (1) should the automatic stay in Commonwealth's bankruptcy be extended to stay proceedings against defendant Young, and (2) should the arbitration award be confirmed, or (3) should it be vacated.

---

[3]     The response recites that it was being filed by "the defendants," presumably including Commonwealth, even though it is in bankruptcy.   The trustee in bankruptcy also seems to join in it.

5

## **DISCUSSION**

On March 6, 2015, the AAA issued an award in favor of Cadence Bank and against Young, finding that Young breached his personal guaranties of the promissory notes executed by Commonwealth in favor of Cadence,4 and finding him liable for the unpaid balance due under the notes of $447,632.96, which included principal, late fees, and interest, and which also included $85,622.47 in attorney's fees and collection costs.   (Doc. 21-1, p. 6).   In spite of the fact that there have been a half-dozen motions filed, the central issue presented is whether the court should confirm the arbitration award.    The motion to stay, the motion to vacate, and motion to strike are essentially alternate attacks on the validity of the arbitration award, which the plaintiff's motion seeks to have confirmed.

### A.   *Should the Bankruptcy Stay Extend to Defendant Young?*

A threshold issue the court must address is the contention by the trustee in bankruptcy and defendant that the automatic stay should be extended to stay proceedings against Young until Commonwealth's bankruptcy case (including the

---

[4]    Specifically, the arbitrator found that Commonwealth had borrowed money from Cadence's predecessor-in-interest (Superior Bank) to finance a real estate development and had executed two promissory notes and a mortgage to secure the loan.   Also, "Respondent [Young] signed Guaranty Agreements on July 30, 2004 and September 29, 2005 guaranteeing the payment of the Notes. The Guaranty Agreements were absolute, continuing, and unconditional guarantees by the Respondent for repayment of the Notes."   (Doc. 21-1, p. 2).

6

litigation of its counterclaims against Cadence) is completed.  For at least two reasons, the court finds that the stay cannot be extended in this action.

The first reason is that the trustee and defendant Young seek to have *this* court extend the stay to Young, not the bankruptcy court in which Commonwealth's bankruptcy proceedings are pending.   This court is the wrong forum for making that determination.   Just as the bankruptcy court explained in In re Jefferson County, 491 B.R. 277 (Bkrtcy. N.D. Ala. 2013), whether the § 362 stay extends to non-debtors is a determination to be made by the bankruptcy court in which the bankruptcy proceedings are pending, not the courts where proceedings against the non-debtor may be pending.   That court said:

> Generally, the automatic stay of § 362(a)(1) applies only to certain actions taken or not taken with respect to a debtor, and not with respect to such action or inaction affecting other parties. See A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986).   However, courts have recognized that certain ''unusual circumstances'' warrant applying the § 362(a)(1) stay to proceedings against a non-debtor defendant where such an application furthers the purposes behind the stay. See id.; Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003) (''The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.'').   Such unusual circumstances have been found (1) when an indemnification or contribution relationship creates an identity of interests between the debtor and the non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the debtor; or

(3) when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party.  See, e.g., A.H. Robins, 788 F.2d at 999; Queenie, Ltd., 321 F.3d at 287; Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns–Manville Corp.) (Johns–Manville I), 40 B.R. 219, 223–26 (S.D.N.Y. 1984); Lesser v. A–Z Assocs. (In re Lion Capital Grp.), 44 B.R. 690, 702–04 (Bankr. S.D.N.Y. 1984).

Id. at 284.   In In re Jefferson County, it was the bankruptcy court that extended the § 362 stay to actions pending in New York state courts.   By analogy, if the trustee and defendant Young believe the stay in Commonwealth's bankruptcy should extend to Young as well, they should seek that determination in the bankruptcy court where the Commonwealth proceedings are pending, not here.

But even if this court is the proper forum in which to determine whether the bankruptcy stay in a pending bankruptcy case should cover a non-debtor defendant in this court, it would not be appropriate to do so in this case.   The bankruptcy stay ordinarily does not extend to non-debtors (i.e., persons or entities who have not sought the protection of bankruptcy).   In re Jefferson County, 491 B.R. 277, 284 (Bkrtcy. N.D. Ala. 2013).   If any of three "unusual circumstances" exists, the stay may be extend to non-debtors "(1) when an indemnification or contribution relationship creates an identity of interests between the debtor and the non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the

8

debtor; or (3) when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party." Id. Notwithstanding defendant Young's claim that Cadence's claims against him and those involved in the Commonwealth bankruptcy are "intertwined," none of these "unusual circumstances" exists in this case. The claims litigated against Young in the arbitration proceeding are not so intertwined with those involved in the Commonwealth bankruptcy that the stay should extend to Young as well.

The language of the personal guaranties executed by Young, which are the legal foundation of the claims against him, clearly make his obligation to pay the Cadence loan absolute and unconditional. His duty to pay the loan is simply not intertwined with that of Commonwealth. The two guaranty agreements executed by defendant are essentially identical, except for the dates and amounts involved.[5] Both contain the following provisions:

> The guaranty provided for in this Section 1 is an absolute, unconditional, present and continuing **guaranty of payment** and not of collectibility and is **in no way conditioned upon or limited by any attempt to collect from the Borrower** or any other Obligor (as defined below) or the exercise of any other remedies the Bank may have against any other person, firm or corporation (including, without limitation, any other guarantors and any other maker, endorser, surety

---

[5]     The Guaranty Agreements are annexed to the complaint as exhibit 3.   (Doc. 1).

of, or other party to, any of the Loan Documents, all of the same being hereinafter collectively referenced to as the "Obligors" and individually as an "Obligor") **or the resort to any other security, guaranty or collateral held by the Bank**, or any other action, occurrence or circumstance whatsoever…. ; and that **the Bank will not be required first to proceed against the Borrower or resort to the security, guaranty or collateral, pledged or granted to it by any instrument or agreement** (including, without limitation, the Loan Documents), or otherwise assigned or conveyed to it, but in case of default in the payment of any of the Guaranteed Payments, the Bank may forthwith look to the Guarantor for payment under the provisions hereof.

     **2.**  **Nature of Obligations**.  The obligations and liabilities of the Guarantor under this Agreement are primary obligations of the Guarantor, are continuing, absolute and unconditional, are joint and several with the obligations and liabilities of all other guarantors (if any) now or hereafter guaranteeing the Guaranteed Payments, or any of them, shall not be subject to any counterclaim, recoupment, set-off, reduction or defense based upon any claim that the Guarantor may have against the Borrower, the Bank, any of the Obligors or any of their respective affiliates, and shall remain in full force and effect until all of the Guaranteed Payments have been paid in full, **without regard to, and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition (whether or not the Guarantor shall have any knowledge or notice thereof), including, without limitation, any one or more of the following**, whether or not with notice to, or consent of, the Guarantor:

     (a) **any term or provision of any instrument or agreement (including, without limitation, the Loan Documents)** applicable to the Borrower or any of the Obligors;

     (b) **any invalidity or unenforceability of any such instrument** or agreement (including, without limitation, the Loan Documents);

\* \* \*

(f) **the compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower**, any of the Obligors or any other party under any such instrument or agreement (including, without limitation, the Loan Documents);

\* \* \*

(l)  the death of, or voluntary or involuntary liquidation or dissolution of, sale or other disposition of all or substantially all of the assets of, or the marshaling of assets and liabilities, receivership, insolvency, **bankruptcy**, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, **or other similar proceeding affecting, the Borrower** or any of the Obligors or any of their respective assets, or any action taken by any trustee or receiver or by any court in any such proceeding, **or the disaffirmance, rejection or postponement in any such proceeding of any of the Borrower's,** any Obligor's or any other party's **obligations or undertakings set forth in any such instrument or agreement (including, without limitation, the Loan Documents);**

\* \* \*

(n) the release or **discharge (by operation of law** or otherwise) **of the Borrower**, any of the Obligors or any other party from the performance or observance of any obligation, covenant, agreement, undertaking or condition to be performed by the same under any such instrument or agreement (including, without limitation, the Loan Documents);

(o) **any limitation on the liabilities or obligations of the Borrower**, any of the Obligors or any other party under any such instrument or agreement (including, without limitation, the Loan Documents), or any termination, cancellation, frustration, invalidity or unenforceability, in whole or in part, of any such instrument or agreement (including, without limitation, the Loan Documents) or any

11

limitation on the method or terms of payment thereunder that may now or hereafter be caused or imposed in any manner whatsoever;

\* \* \*

(s) any other matter that might otherwise be raised in avoidance of, or in defense against an action to enforce, the obligations of the Guarantor under this Agreement.

**3.   Covenant and Waiver by Guarantor.**   The **Guarantor** unconditionally **waives**, insofar as such Guarantor's obligations hereunder are concerned:

\* \* \*

(e) any right to the enforcement, assertion or exercise of any right, power **or remedy under or in respect of any such instrument** or agreement (including, without limitation, the Loan Documents); and

(f) **any requirement that the Borrower**, any of the Obligors or any other person **be joined as a party to any proceeding for the enforcement of any term of any such instrument or agreement** (including, without limitation, the Loan Documents), any requirement of diligence on the part of the Bank and any requirement on the part of the Bank to mitigate any damages resulting from any non-payment of any Guaranteed Payment or any default or event of default under any such agreement or instrument (including, without limitation, the Loan Documents).

**4.   Subordination, Assignment, Relinquishment by the Guarantor**

\* \* \*

(c)   **Guarantor's Relinquishment**.   In the event that the Guarantor now is or hereafter becomes an insider, as defined in

11 U.S.C. §101 or any amendment or replacement thereof or successor thereto, of the Borrower, the Guarantor hereby WAIVES AND RELINQUISHES ANY AND ALL RIGHTS, WHETHER AT LAW, IN EQUITY, OR OTHERWISE, THAT THE GUARANTOR NOW OR HEREAFTER MAY HAVE (INCLUDING WITHOUT LIMITATION ANY RIGHTS OF INDEMNITY, CONTRIBUTION, REIMBURSEMENT OR SUBROGATION) TO RECOVER FROM THE BORROWER OR FROM ANY PERSON, FIRM OR CORPORATION THAT MAY NOW OR HEREAFTER HAVE SUCH A RIGHT TO RECOVER FROM THE BORROWER, ANY AMOUNTS PAID BY THE GUARANTOR TO SATISFY, IN WHOLE OR IN PART, THE GUARANTEED PAYMENTS. This subsection is for the benefit of the Borrower as well as the Bank and may be enforced by the Borrower.

* * *

19.   <u>Security</u>. The Guaranteed Payments are secured by that certain Mortgage, Security Agreement and Assignment of Rents and Leases between the Borrower and the Bank.   Guarantor hereby agrees that the Bank may exercise its rights hereunder and under any Loan Document concurrently or successively, in any order selected by the Bank, and that **it shall not be necessary for the Bank to exercise any remedy under the Note, the Mortgage or any other Loan Document, or any of them, in order to be entitled to exercise any remedy hereunder**, and vice versa.

"Guaranty Agreement," dated July 24, 2004, annexed as Exhibit 3 to the Complaint

(bolding added for emphasis.

The court has set out these terms of the guaranty agreements at some length to

emphasize the extent to which Cadence's claim against Young for payment of the

13

loan amount is not limited by or contingent upon any claim against Commonwealth or any remedy or defense available to Commonwealth.   Young contracted to pay the outstanding loan balance regardless of why Commonwealth did not or could not be made to pay the balance.   That is precisely the purpose of a guaranty.   If the debtor cannot or will not pay back the loan, the guarantor will.   In paragraph 3(f), Young explicitly waived the right to insist that Commonwealth be made a party to any suit making a claim against him.   He acknowledged that his guaranty remained effective even if the provisions of the Loan Documents were invalid or violated by Cadence.   Under paragraph 2(o), no limitation or defense that could be invoked by Commonwealth precludes collection of the loan balance from him.   What happens in the Commonwealth bankruptcy proceeding, or with respect to its counterclaim against Cadence, does not affect the guaranty obligation of the defendant.   It simply is not true that the guaranty claim against Young is so intertwined with the debt owed by Commonwealth that the "unusual circumstances" contemplated in In re Jefferson County require extension of the bankruptcy stay to defendant.   The motion for extension of the stay will be denied.

> B.   *Affirm or Vacate the Arbitrator's Award?*

Federal judicial review of an arbitration decision is "extremely narrow," and arbitration awards are given a "strong presumption" of finality.   Sullivan, Long &

Hagerty, Inc., v. Local 559, 980 F.2d 1424 (11th Cir. 1993). The standard of review has been deemed "among the narrowest known to the law." AIG Baker Sterling Heights, LLC, v. American Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007). The limited review of arbitration awards is in keeping with the strong public policy favoring arbitration as a means of dispute resolution. See, e.g., ButterKrust Bakeries v. Bakery, Confectionery and Tobacco Workers Int'l Union, 726 F.2d 698 (11th Cir. 1983).

The standard for review of an arbitrator's award was developed by the Supreme Court in 1960 as a product of the "Steelworkers Trilogy" of cases. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403; United Steelworkers v. Warrior & Gulf  Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424. The Supreme Court held that where the parties provide for arbitration, the interpretation of a collective bargaining agreement is a question for the arbitrator, and "courts have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written contract which will support the claim." American Mfg., 363 U.S. at 568. An arbitrator has the power to decide facts and to interpret the contract governing those facts; even where an

15

arbitrator misreads a contract, the court should not reject the arbitrator's award. United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).   An arbitration is given "considerable leeway" by the court that undertakes a review.   First Options of Chicago v. Kaplan, 514 U.S. 938, 948, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

The Eleventh Circuit Court of Appeals has noted that "a federal district court can vacate an arbitration award, but only in extremely narrow circumstances." Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1311 (11th Cir. 1998).   One of those grounds is "evident partiality or corruption in the arbitrators."   146 F.3d at 1311.   This ground is not alleged by Young, who is attacking the award.    The other statutory grounds for vacation are (1) where the award was procured by corruption, fraud, or undue means, (2) where the arbitrator was guilty of misconduct, or (3) where the arbitrator exceeded his or her power.   9 U.S.C. § 10.   Only if the arbitrator has failed to recite a rationale for the award, and the reviewing court cannot find a rational basis for the award, may the award be vacated on the non-statutory bases that (1) that the award is arbitrary and capricious; (2) that enforcement of the award is contrary to public policy; and (3) that the award was entered in manifest disregard of the law.   Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 n.9.    It is the party seeking vacation of the

award that bears the burden of setting forth sufficient grounds to do so.   Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1014 (11th Cir. 1998).

Young first asserts that the arbitrator was "guilty of misconduct" and acted "in direct violation of the automatic stay under Section 362 of the Bankruptcy Code" because he failed to postpone the hearing in light of Commonwealth's pending bankruptcy.   (Doc. 27, p. 4).   However, it is clear that the arbitration proceedings against Commonwealth, the debtor, were stayed, and the arbitration continued only as to Young on the independent legal claims arising from his guaranty agreements. As already explored above, the claim against the defendant arises from the guaranty agreements he executed, which are in no way continent upon or limited by the claims or proceedings involving Commonwealth.   While it may have been within the power of the Bankruptcy Judge to extend the stay to include Young (and this court expresses no opinion about that), the bankruptcy court did not do so; failing that, this court cannot say that the arbitrator committed any misconduct or violated the automatic stay.[6]

---

[6]        The court presumes that Commonwealth has filed motions in the bankruptcy court seeking to have the stay extended to Young, and that the motions have been denied.   There is no support for the contention that this court is the proper forum for seeking the extension of the stay; accordingly the motion to stay (doc. 36) is due to be and hereby is DENIED.   The motion to withdraw the first-filed motion to stay (doc. 35) is GRANTED.   The first motion to stay (doc. 34) is thus MOOT.

Young further asserts that the arbitrator was guilty of misconduct in that he failed to hear evidence of Commonwealth's counterclaim for breach of duty, fraud, and wrongful foreclosure.  (Doc. 27, p. 6-7).  This assertion seems, at best, nonsensical, because the stay does apply to Commonwealth; the claims made by Commonwealth could not be heard precisely because Commonwealth had filed for bankruptcy protection.  As pointed out above, Young had no right to assert Commonwealth's counterclaims in the arbitration, nor were the claims against him limited by or contingent upon the counterclaims.  Even assuming that Commonwealth's counterclaims have some impact upon Cadence Bank's ability to collect the debt from Commonwealth, they have no such limiting effect on Young's absolute and unconditional guaranty of payment.  The Guaranty Agreements explicitly provided that they are "in no way conditioned upon or limited by any attempt to collect from the Borrower" and that "the Bank will not be required first to proceed against the Borrower or resort to the security, guaranty or collateral, pledged or granted to it by any instrument or agreement" before enforcing the guaranty given by Young.  Even assuming Commonwealth's counterclaims could have established some invalidity in the Note and Mortgage, making them unenforceable, the Guaranty Agreement remained enforceable against Young notwithstanding "any invalidity or unenforceability of any such instrument or

18

agreement (including, without limitation, the Loan Documents)."   In sum, the arbitrator's decision to proceed with the arbitration as to Young's guaranty without hearing Commonwealth's counterclaims worked no prejudice to the defendant.[7]

Finally, Young asserts that the arbitrator "completely disregarded" the law of Alabama "as it pertains to how the foreclosure was conducted."   (Doc. 27, pp. 10-11).   The defendant's argument that the sale was "commercially unreasonable" is conclusory and unsupported by any case law that presents a factually similar scenario.   In essence, Young argues that because the price offered at the foreclosure sale was low, that fact precludes any finding that the foreclosure sale was commercially reasonable.   Again, Young's liability to Cadence under the Guaranty Agreements was not contingent upon or limited by any invalidity in the remedy invoked against Commonwealth.   As already noted, neither an invalidity in the original loan instruments nor in the foreclosure remedy used by Cadence limits Young's guaranty of payment of the loan.   He explicitly agreed in the Guaranty Agreements that "Guarantor hereby agrees that the Bank may exercise its rights hereunder and under any Loan Document concurrently or successively, in any order

---

[7]     Nevertheless, it is clear from the arbitration decision that the arbitrator examined the claims that the property foreclosure was violative of Alabama law, and found that there was "no wrongful foreclosure by the Claimant."   (Doc. 21-1, p. 5).   The court expresses no opinion as to whether this finding has any effect on Commonwealth's bankruptcy proceedings.   It is binding as to Young.

selected by the Bank, and that **it shall not be necessary for the Bank to exercise any remedy under the Note, the Mortgage or any other Loan Document, or any of them, in order to be entitled to exercise any remedy hereunder**, and vice versa."   (Bolding added).   Further, the Guaranty Agreements remained enforceable regardless of "any limitation on the liabilities or obligations of the Borrower… under any such instrument or agreement (including, without limitation, the Loan Documents), or any termination, cancellation, frustration, invalidity or unenforceability, in whole or in part, of any such instrument or agreement (including, without limitation, the Loan Documents) or any limitation on the method or terms of payment thereunder that may now or hereafter be caused or imposed in any manner whatsoever."[8]   Regardless of whether the mortgage foreclosure is deficient as to Commonwealth, any such deficiency does not prevent Cadence from calling upon Young for payment under his guaranties.

---

[8]     The arbitrator clearly considered the low price brought at the sale, and found that the amount was not "so inadequate as to raise a presumption of fraud, unfairness, or culpable mismanagement."   (Doc. 21-1, p. 5).   The court expresses no opinion as to whether this finding by the arbitrator has any effect on Commonwealth's bankruptcy proceedings.   It is binding as to Young.

## **CONCLUSION**

For all of these reasons, the court GRANTS the motion to confirm the arbitration award (doc. 22) and, by separate document, will enter final judgment against the defendant, John L. Young, in the amount awarded in the arbitration plus daily interest thereafter.   The court hereby DENIES the motion to vacate the arbitration award (doc. 27).   The motion for an order (doc. 38) also is GRANTED.

Done this the 7TH day of December, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE